844 P.2d 839

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Gaylord Shonn BARKER, Defendant–Appellant.**

**No. 13624.**

Court of Appeals of New Mexico.

Oct. 22, 1992.

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Ruben S. Cortez, Hobbs, for defendant-appellant.

## OPINION

PICKARD, Judge.

This case involves the validity of an affidavit filed in support of a search warrant. Defendant entered a no-contest plea to possession of marijuana with intent to distribute, reserving the right to appeal the trial court's denial of his motion to suppress. The sole issue on appeal is whether the trial court erred in refusing to suppress evidence because the affidavit, which reiterated the allegations of an unnamed police informant, was defective on its face. We answer the question by holding that the unnamed informant's declaration against penal interest was insufficient under the circumstances of this case to satisfy the requisite veracity/credibility test under New Mexico law. We take this opportunity to clarify the requirements for that test and to provide guidelines for its application. We reverse.

■ Probable cause for issuance of a search warrant must be established from within the four corners of the affidavit tendered in support of the warrant. *See State v. Van De Valde,* 97 N.M. 680, 642 P.2d 1139 (Ct.App.1982); *State v. Lewis,* 80 N.M. 274, 278, 454 P.2d 360, 364 (Ct.App. 1969), *overruled on other grounds by State v. Nemrod,* 85 N.M. 118, 122, 509 P.2d 885, 889 (Ct.App.1973). The warrant authorizing the search of defendant and his home in this case was based on an affidavit filed by a Hobbs police officer. The affidavit stated that the affiant was a detective assigned to the narcotics enforcement unit, that he had been a police officer for nine years, and that he was familiar with drug trafficking patterns, drug identification,

and field testing of suspected controlled substances. The affidavit further stated:

> This informant admitted to * * * the Affiant of purchasing and using marihuana in the past. Additionally this informant has been inside the defendant's residence at 1916 N. Gila, Hobbs, Lea County, New Mexico within the past 48 hours and while at this residence did observe first hand the defendant selling marihuana at that location. This informant is an admitted drug user and is familiar with the packaging and selling of various types of drugs. This informant has additionally been inside the defendant's residence at 1916 N. Gila, Hobbs, Lea County, New Mexico on several occasions in the past and has witnessed drugs being sold at that location on those occasions and has also purchased drugs from Shonn Barker in the past from this location. This reliable informant has given * * * a statement admitting to purchasing and using marihuana which are statements against the informant's own interests, and although this informant has not given information in the past, the informant's reliability has been show [sic] by giving detailed information regarding the defendant's residence, and by making statements against the informant's own penal interest.

■ We begin by announcing that we are deciding this case under state law. When part or all of the information provided to the court comes from confidential informants, SCRA 1986, 5–211(E) requires that the information provided meet the two-prong test set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). This test remains the law in New Mexico, rather than the "totality-of-the-circumstances" test set forth in *Illinois v. Gates,* 462 U.S. 213, 231–39, 103 S.Ct. 2317, 2328–33, 76 L.Ed.2d 527 (1983). *State v. Cordova,* 109 N.M. 211, 217, 784 P.2d 30, 36 (1989).

■ The *Aguilar/Spinelli* test is designed to ensure that the court, rather than the police, make the determination that probable cause, based on reliable information, is present. *See Cordova,* 109 N.M. at 212–13, 784 P.2d at 31–32. Thus, the first prong of the test requires that the affidavit include the factual basis for any conclusions drawn by the informant to enable the court to perform an independent analysis of the facts and conclusions. *See id.* at 213, 784 P.2d at 32. The second prong requires that facts be presented to the court to show either that the informant is inherently credible or that the information from the informant is reliable on this particular occasion. *See id.* at 213–14, 784 P.2d at 32–33; 1 Wayne R. LaFave, *Search and Seizure* § 3.3(a) at 613 (2d ed. 1987). These requirements are often referred to as the "basis of knowledge" and "veracity" (or "credibility") tests. *Cordova,* 109 N.M. at 213, 784 P.2d at 32.

■ We believe that the affidavit in this case contains an adequate basis for the informant's knowledge of the allegation that defendant was selling marijuana out of his house. First-hand observations by the informant serve to meet the "basis of knowledge" prong of the *Cordova* test. *State v. Wisdom,* 110 N.M. 772, 776, 777, 800 P.2d 206, 210, 211 (Ct.App.), *cert. denied,* 110 N.M. 749, 799 P.2d 1121 (1990). It is in the application of the second prong, the veracity/credibility test, that this affidavit fails.

■ There is nothing in the affidavit to show that the informant is inherently or characteristically credible. *Cf. Cordova,* 109 N.M. at 212, 213–14, 784 P.2d at 31, 32–33 & n. 2 (the affidavit recited that the informant provided information, proved to be true, in the past, thereby establishing a track record). The affidavit suggests, and the state argues, that the informant was reliable because of statements he made that were against his penal interest. Many courts, including ours, agree that statements against penal interest may provide a basis to judge the informant's credibility. *See State v. Perea,* 85 N.M. 505, 508, 513 P.2d 1287, 1290 (Ct.App.1973). *See generally* 1 LaFave, *supra,* § 3.3(c). The rationale behind this rule is that people do not lightly admit a crime and place critical evi-

dence in the hands of the police in the form of their own admission; thus, admissions of crime may carry their own indicia of credibility. *United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2081–82, 29 L.Ed.2d 723 (1971).

■ The state concedes, and we agree, that in order for a statement against penal interest to be used to establish the credibility of the informant, there must be a showing that the informant's statement against his own penal interest was closely related to the criminal activity for which probable cause to search is being established. *See Knaub v. State,* 394 N.E.2d 201, 204 (Ind. Ct.App.1979); *cf. State v. Self,* 88 N.M. 37, 42, 536 P.2d 1093, 1098 (Ct.App.1975). Here, there are several statements made by the informant recited in the affidavit. The first indicated that the informant had purchased and used marijuana in the past. There is no nexus between the informant's general purchase and use of marijuana in the past and defendant's selling of marijuana. The second statement, the admission that the informant is a drug user, likewise has no nexus to defendant's criminal activity. With regard to the statement that the informant had recently been in defendant's residence and witnessed a purchase, there is a nexus, since defendant was being charged with distribution of marijuana, but simply admitting to observation of a criminal transaction does not constitute an admission against penal interest. *See People v. Lindner,* 24 Ill.App.3d 995, 322 N.E.2d 229, 231 (1975) (indicating that such a statement does not sufficiently demonstrate the informant's complicity in distribution of drugs).

The state has informed us in its answer brief that it is relying only on the remaining statement of the informant, to the effect that the informant had been to defendant's home on several past occasions and, while there, had purchased drugs from defendant, as a statement against penal interest having the necessary "nexus" to meet the veracity/credibility prong of the test. While we agree that the statement meets the "nexus" test, we nevertheless conclude

that that is insufficient to establish probable cause.

The question we must address in this case is whether a statement admitting facts from which the elements of a crime may be vaguely inferred, without more, provides a sufficient basis for concluding that the informant's information on this occasion was reliable. *See Cordova,* 109 N.M. at 213–14, 784 P.2d at 32–33 & n. 2. Despite the adoption of this method of showing reliability of an informant's statement under *Harris,* there is no question but that the "admission against penal interest" exception is subject to misuse. *See State v. Ballou,* 148 Vt. 427, 535 A.2d 1280, 1284–85 n. 3 (1987) (citing 1 LaFave, *supra,* § 3.3(c)). For this reason, while courts in other states have cited this exception as one factor bearing on reliability or veracity, most have declined to give it controlling weight or to find it conclusive, without more, on these issues. *Ballou,* 535 A.2d at 1284–85 & n. 3; *see also State v. Mosley,* 412 So.2d 527, 531 (La.1982); *People v. Johnson,* 66 N.Y.2d 398, 497 N.Y.S.2d 618, 622–23, 488 N.E.2d 439, 443 (1985) (such admissions should be used carefully, only after careful consideration of all relevant circumstances indicates that there is a basis for finding reliability in the context of the particular case); *Commonwealth v. Norris,* 6 Mass.App.Ct. 761, 383 N.E.2d 534, 539 (1978) (admission against penal interest is not conclusive on issue of reliability); *State v. Carlile,* 290 Or. 161, 619 P.2d 1280, 1283 (1980) (admission of criminal activity does not go far in establishing that an informer is a generally credible source); *State v. O'Connor,* 39 Wash.App. 113, 692 P.2d 208, 213–14 (1984) (suggesting that naming the informant entitles assertions to greater weight, as does the fact that admissions were made in post-arrest situation in which informant will risk disfavor with the prosecution if lies are told).

Our own cases have not been entirely consistent in this area. Like our sister courts, this court has been careful at times to acknowledge and discuss the impact of other information when an unnamed informant's self-incriminating allegations have been coupled with corroborating facts or

circumstances in an affidavit. *See, e.g., State v. Garcia,* 90 N.M. 577, 579, 566 P.2d 426, 428 (Ct.App.), *cert. denied,* 90 N.M. 636, 567 P.2d 485 (1977); *Perea,* 85 N.M. at 509, 510, 513 P.2d at 1291, 1292 (wherein authoring Judge Hernandez and specially concurring Judges Wood and Lopez all discuss police observation of needle marks on informants' arms as corroborating information). In other cases, however, we have assumed without further discussion that a statement against penal interest automatically serves to establish credibility, without more. *See, e.g., State v. Archuleta,* 85 N.M. 146, 509 P.2d 1341 (Ct.App.) (stating that an informant's statement of ten different purchases of heroin at a residence constituted a declaration against the informant's penal interest of sufficient reliability to uphold a determination of probable cause), *cert. denied,* 85 N.M. 145, 509 P.2d 1340, *and cert. denied,* 414 U.S. 876, 94 S.Ct. 85, 38 L.Ed.2d 121 (1973); *State v. Therrien,* 110 N.M. 261, 264, 794 P.2d 735, 738 (Ct.App.1990) (dicta suggesting that such declarations are inherently trustworthy); *Wisdom,* 110 N.M. at 776–77, 800 P.2d at 210–11 (dicta suggesting that a statement against penal interest can alone support the conclusion that the informant was truthful on the particular occasion); *See also Cordova,* 109 N.M. at 213, 784 P.2d at 32 n. 2 (indicating that when an informant's credibility is not established by a previous track record, it may be "assumed when the tip constitutes an admission that the informant was involved in the illegal activity" (citing *Perea,* 85 N.M. at 508, 513 P.2d at 1292, and *Harris,* 403 U.S. at 583, 91 S.Ct. at 2081–82)).

Notwithstanding the comments in *Wisdom* and *Therrien* and the apparent holding in *Archuleta,* we think the better view is that such statements do not, in and of themselves, necessarily establish an unnamed informant's credibility and veracity. *See, e.g., Ballou,* 535 A.2d at 1284–85 & n. 3; *Johnson,* 497 N.Y.S.2d at 622–23, 488 N.E.2d at 443; *Norris,* 383 N.E.2d at 539; *Carlile,* 619 P.2d at 1283; *cf. State v. Huerta,* 104 N.M. 340, 342, 721 P.2d 408, 410 (Ct.App.1986) (discussing foundation required for admission of declarations against penal interest at trial). Nor do we believe we are compelled to hold otherwise by the footnote in *Cordova,* which we read as simply affirming New Mexico's recognition of the applicability of the declaration against penal interest exception to informant allegations in search warrant affidavits, based on *Perea* and *Harris,* as a component of reliability.

While we do not require that declarations against penal interest in an affidavit be shown to have the same degree of reliability that such evidence must have for admission at trial, *see, e.g., Huerta,* 104 N.M. at 342–43, 721 P.2d at 410–11; *Perea,* 85 N.M. at 507, 513 P.2d at 1289, we do require that something more be shown than what was shown here. There must be information in the affidavit that tends to show that the informant would have had a reasonable fear of prosecution at the time he made the statement. *See Commonwealth v. Melendez,* 407 Mass. 53, 551 N.E.2d 514, 516 (1990).

By way of illustration of the additional information needed, we discuss briefly the shortcomings of the affidavit before us and identify showings that have been found adequate. These examples are not intended to be exhaustive. For instance, the affidavit in this case reflects no independent police corroboration of the informant's information, save the verification of defendant's address. Nor does it contain any recitation of the surrounding circumstances of the informant's admissions, which would serve to show why they were trustworthy. For instance, it does not contain any specific or detailed facts surrounding the informant's admissions, such as when or how often he purchased drugs from defendant or the nature of the drugs. *Cf. Harris,* 403 U.S. at 575, 91 S.Ct. at 2077–78 (affidavit stated that informant had purchased illicit whiskey from residence described, for a period exceeding two years, most recently within two weeks.) Finally, the informant is not named. *See* 1 LaFave, *supra,* § 3.3(c) at 647 (if informant's name is not disclosed, this makes it much more likely that he is a "protected police stool-pigeon"); *Mosley,* 412 So.2d at 530 (disclosure of in-

formant's identity can tend to establish a presumption of inherent credibility).  We simply do not know how far the informant's statement, that he had purchased drugs from defendant at this location in the past, subjected him to penal liability in the context of this case.  And without such a showing in the affidavit, or without corroboration of the information, we are reluctant to find that it has the requisite reliability.  *See, e.g., State v. Perea; Ballou,* 535 A.2d at 184–85 & n. 3; *Johnson,* 497 N.Y.S.2d at 622–23, 488 N.E.2d at 443; *Norris,* 383 N.E.2d at 539; *Carlile,* 619 P.2d at 1283.  *See generally Mosley,* 412 So.2d at 531–32 (listing several factors considered by court sufficient to establish credibility).  To the extent that *Archuleta* and our comments in *Therrien* and *Wisdom* may be read as contrary to our holding today, they should not be followed.

Accordingly, we hold that the affidavit for search warrant in this case did not satisfy the requirements of *Cordova.*  Therefore, the search was unlawful and its fruits should not have been admissible against defendant at trial.  Since defendant entered a plea of no contest, this case is reversed and remanded with instructions to allow defendant to withdraw his plea and proceed to trial, absent the unlawfully obtained evidence.  *See State v. Post,* 109 N.M. 177, 181, 783 P.2d 487, 491 (Ct.App. 1989).

IT IS SO ORDERED.

ALARID, C.J., and BIVINS, J., concur.