This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **NO. 29,585**

**RICARDO PEREZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Gary M. Jeffreys, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellee

McGarry Law Office
Kathleen McGarry
Glorieta, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

Defendant pled no contest to one count of attempted trafficking controlled substances, reserving the right to appeal the denial of his motion to suppress. For the reasons that follow, we affirm.

**BACKGROUND**

In an affidavit dated June 25, 2008, a detective from the Luna County Sheriff's Department stated that he had conducted an interview with a third-party informant, Victor Caballero, on the previous day. In the course of that interview, Caballero had confessed to committing several recent burglaries in Luna County. Caballero had further indicated that some of the property stolen in the course of the burglaries, specifically including a welder, welding rods, snap-on tool boxes with a variety of tools, and a reel-to-reel stereo system, was at Defendant's home in Deming, New Mexico. Caballero had explained that he had traded these items for money and methamphetamine. Based on this information, the detective obtained a search warrant.

The ensuing search of Defendant's home and the environs was promptly conducted. Although none of the stolen items specifically mentioned by Caballero were found, the officers observed drug paraphernalia, a white crystalline substance, and other stolen property. These observations were detailed in a second affidavit.

2

Based upon that affidavit, a second warrant was issued authorizing another search. Various incriminating items were seized in the course of that search.

Defendant filed a motion to suppress all of the evidence seized in the course of both searches. As grounds he argued that the first affidavit provided inadequate support for the issuance of the first warrant, both because it failed to establish Caballero's credibility and because it was based on stale information. To the extent that the first warrant was improperly issued, Defendant argued that the evidence obtained in the course of the second search was fruit of the poisonous tree.

After hearing the arguments of counsel, the district court denied Defendant's motion to suppress. Defendant subsequently entered into a plea agreement, reserving the right to challenge the district court's ruling on the motion. This appeal followed.

**STANDARD OF REVIEW**

On appeal we must review the issuing court's decision. *State v. Evans*, 2009-NMSC-027, ¶ 12, 146 N.M. 319, 210 P.3d 216. "[The] issuing court's determination of probable cause must be upheld if the affidavit provides a substantial basis to support a finding of probable cause." *State v. Williamson*, 2009-NMSC-039, ¶ 29, 146 N.M. 488, 212 P.3d 376. We do not substitute our judgment for that of the issuing court. *Id.* "[I]f the factual basis for the warrant is sufficiently detailed in the search warrant affidavit and the issuing court has found probable cause, the

3

[reviewing] courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Id.* ¶ 30 (alteration in original) (internal quotation marks and citation omitted).

**DISCUSSION**

Defendant contends that the information which supplied the basis for the issuance of the initial warrant was both unreliable and stale. We address each contention in turn.

**The Informant**

As Defendant observes, the first affidavit was based on the hearsay statements of Caballero, an informant. Rule 5-211(E) NMRA provides that hearsay may supply a proper basis for the issuance of a warrant, "provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." *Accord State v. Cordova*, 109 N.M. 211, 213, 784 P.2d 30, 32 (1989) (observing that the allegations of an informant cannot provide probable cause to issue a search warrant unless both the basis of the informant's knowledge and the veracity or credibility of the informant are demonstrated). In his brief on appeal, Defendant appears to take issue with both of these requirements.

With respect to the factual basis for the information, the affidavit clearly reflects that the information Caballero supplied was based on first-hand experience, gained by virtue of his direct interaction with Defendant. *See generally State v. Lujan*, 1998-NMCA-032, ¶ 12, 124 N.M. 494, 953 P.2d 29 ("When, as in this case, first-hand knowledge naturally and logically flows from a common-sense reading of the affidavit, that will suffice."). This is sufficient to satisfy the basis of knowledge requirement. *See, e.g.*, *State v. Whitley*, 1999-NMCA-155, ¶ 4, 128 N.M. 403, 993 P.2d 117 (holding that the basis of knowledge requirement was met where, among other considerations, the informant personally observed the defendant); *State v. Montoya*, 114 N.M. 221, 225, 836 P.2d 667, 671 (Ct. App. 1992) (holding that the basis of knowledge requirement was satisfied where a confidential informant had personal knowledge through observation of the defendant's activities).

With respect to credibility, the affidavit clearly identifies the informant by name. This is a highly significant factor, partly because the strictures of *Aguilar-Spinelli* "were aimed primarily at unnamed police informers," and partly because "a named informant has greater incentive to provide truthful information because he or she is subject to unfavorable consequences for providing false or inaccurate information to a greater degree than an unnamed or anonymous individual." *State v. Steinzig*, 1999-NMCA-107, ¶ 19, 127 N.M. 752, 987 P.2d 409

5

(emphasis omitted) (internal quotation marks and citation omitted). In addition, the information supplied is clearly against penal interest. This supplies additional support for the informant's credibility. *See State v. Barker*, 114 N.M. 589, 591-92, 844 P.2d 839, 841-42 (Ct. App. 1992) (holding that statements against penal interest reflect upon an informant's credibility where there is a nexus to the defendant's criminal activity, and where information in the affidavit tends to show that the informant would have had a reasonable fear of prosecution at the time he made the statement). Finally, the circumstances surrounding the statement tend to suggest reliability, insofar as Caballero was already facing prosecution in relation to the burglaries, and "[o]ne who knows the police are already in a position to charge him with a serious crime will not lightly undertake to divert the police down blind alleys." *Steinzig*, 1999-NMCA-107, ¶ 20 (internal quotation marks and citation omitted). We conclude that the foregoing considerations sufficiently establish the informant's credibility.

In his brief, Defendant urges that the information supplied by Caballero should not be deemed credible because the affidavit fails to establish that he had provided truthful information in the past and contains no indication that the officer had corroborated the information supplied by Caballero. However, we conclude that such additional support for the informant's credibility is not required in light of the other factors previously considered. We therefore reject Defendant's first assertion of error.

**Staleness**

Defendant also challenges the affidavit supporting the first search warrant on grounds that the information contained therein should be deemed stale.

"Probable cause to issue the warrant requires a factual showing that, at the time of the application for the warrant, evidence relating to the commission of a crime exists on the premises sought to be searched.  Thus, information which is 'stale' will not support a finding of probable cause." *State v. Gonzales*, 2003-NMCA-008, ¶ 11, 133 N.M. 158, 61 P.3d 867 (citations omitted).

"[S]taleness involves a variety of considerations, including not only time, but also the character of the crime and the extent of prior activity, the consumable or transferable nature of the items to be seized, the information known about the suspect and his or her habits, and the location to be searched." *Whitley*, 1999-NMCA-155, ¶ 8.  While the foregoing framework applies generally to any case in which staleness is at issue, "the analysis . . . will necessarily depend upon the weight given the unique facts and circumstances" presented. *Gonzales*, 2003-NMCA-008, ¶ 22.

In light of the foregoing, we turn to the facts and circumstances presented in this case.  As previously described, the affidavit submitted in connection with the first search warrant was based on information gathered from the informant, Caballero.

7

This information was supplied in relation to "several burglaries that [had] occurred . . . recently." The reference to 'recent' activity, though imprecise, indicates that the underlying events occurred not long before the affidavit was submitted. *See generally Williamson*, 2009-NMSC-039, ¶ 16 (observing that "affidavits submitted in support of search warrants must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion" (internal quotation marks and citation omitted)). The items to be seized included a welder, welding rods, snap-on tool boxes with a variety of tools, and a reel-to-reel stereo system. These are durable as opposed to consumable goods, which are not inherently incriminating and are of a type often stored at home. *See Gonzales*, 2003-NMCA-008, ¶ 24 (observing that similar general qualities tend to support an inference that the evidence in question is likely to be found at a location to be searched, despite the lapse of time). Finally, the location to be searched, which included a residence, associated outbuildings, trailer, and curtilage, was a stable as opposed to transitory environment. *See State v. Rubio*, 2002-NMCA-007, ¶ 8, 131 N.M. 479, 39 P.3d 144 (noting that because a residence does not have the same transitory nature as a motel room, the probability that the evidence sought will still be there is greater). We conclude that these considerations provide adequate support for the finding of probable cause. *See, e.g.*, *Gonzales*, 2003-NMCA-008, ¶¶ 28-29 (upholding the issuance of a search warrant based on

8

information that was approximately a month and a half old, where the item sought was a durable item that the police had reason to believe the subject would have kept, and where the location to be searched was a residence).

We acknowledge that the affidavit neither contains anything to indicate ongoing criminal activity, nor supplies additional information about Defendant. We further acknowledge that the items to be seized were presumably transferrable, albeit fairly bulky. However, it is not necessary for every factor in the staleness calculus to provide support for an ultimate determination of probable cause. *See, e.g.*, *Gonzales*, 2003-NMCA-008, ¶¶ 28-29 (upholding the issuance of a warrant despite the absence of evidence of ongoing criminal activity). We therefore conclude that none of the alleged shortcomings outweigh the various considerations which support the issuance of the warrant.

In his brief, Defendant urges that the affiant's failure to specify precisely when the burglaries had occurred renders the timeframe so ambiguous that the information should not be deemed current. However, "technical requirements of elaborate specificity have no place" in this arena. *State v. Wisdom*, 110 N.M. 772, 777, 800 P.2d 206, 211 (Ct. App. 1990), *overruled on other grounds by Barker*, 114 N.M. 589, 844 P.2d 839. Moreover, the issuing judge was permitted to read the affidavit in a commonsense manner and make rational inferences. *See Rubio*, 2002-NMCA-007, ¶

9

9, 131 N.M. 479, 39 P.3d 144 ("[A] magistrate may make inferences from the behavior described in the affidavit."). Accordingly, the judge could permissibly have given the term "recent" its commonly accepted meaning and inferred that the information was not rendered stale by the passage of time, particularly in light of the other factors. *See, e.g.*, *Gonzales*, 2003-NMCA-008, ¶¶ 28-29 (upholding the issuance of a search warrant despite the passage of a significant amount of time where similar considerations ultimately supported the finding of probable cause).

Finally, Defendant attempts to analogize to *Whitley* and *State v. Lovato*, 118 N.M. 155, 879 P.2d 787 (Ct. App. 1994), two cases in which search warrants were deemed improvidently issued. However, the analogy is inapt. Unlike the present case, both *Whitley* and *Lovato* involved searches associated with reports of drug-related activity in motel rooms. Because this case involves a search for durable goods at an established residential location, rather than highly consumable goods at a transitory habitation, *Whitley* and *Lovato* are inapplicable. *See generally Gonzales*, 2003-NMCA-008, ¶ 22 (observing that in this context, "the analysis in each case will necessarily depend upon the weight given the unique facts and circumstances of each case").

10

**CONCLUSION**

For the reasons stated, we conclude that the first search warrant was adequately supported by probable cause. We therefore conclude that the evidence ultimately seized was not fruit of the poisonous tree. We therefore affirm.

**IT IS SO ORDERED**.


_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**


_____

**JONATHAN B. SUTIN, Judge**


_____

**CELIA FOY CASTILLO, Judge**