This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v. **NO. 31,891**

**ADONIS PLANCHE-MARRON,**

Defendant-Appellee,

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Robert Schwartz, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Acting Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**VIGIL, Judge.**

**{1}** The State appeals the suppression of evidence obtained in the course of a search. The district court determined that the affidavit submitted in support of the warrant did not establish probable cause. For the reasons that follow, we reverse.

**BACKGROUND**

**{2}** On April 7, 2008, Detective Meek from the Special Investigations Division, Narcotics Unit of the Albuquerque Police Department (Affiant), prepared an affidavit seeking a warrant to search Defendant's apartment. The affidavit specified as follows.

**{3}** Affiant had been contacted by a confidential informant (the CI). The CI stated that it had recently purchased crack cocaine from a Cuban male known as "Adonys" who distributed from 3853 Montgomery NE, # 1007. The CI advised that it had purchased crack cocaine on past occasions up to and including within the last ten days, and further indicated that it could contact "Adonys" for purposes of ordering and purchasing crack cocaine. Affiant noted that the CI had proven itself knowledgeable about the possession, consumption, and distribution of controlled substances and that the CI had "proven to be reliable."

**{4}** Affiant subsequently utilized the CI to conduct a controlled purchase of crack cocaine from "Adonys" at the specified location. Within 72 hours prior to the preparation of the affidavit, Affiant and another detective met with the CI at a predetermined location, where the CI was searched for controlled substances and

currency. After finding neither, Affiant gave the CI a predetermined amount of currency and instructed the CI to purchase a specific amount of crack cocaine. Constant surveillance of the CI was maintained by the detectives. The CI "was viewed to make contact at 3853 Montgomery NE #1007," where it entered the residence. One to five minutes later, the CI exited the residence and proceeded directly to the predetermined, end location, where it handed Affiant a rock-like substance which proved to be crack cocaine. The CI told Affiant that the crack cocaine was purchased from "Adonys." When the CI was subsequently shown a photograph of Defendant, the CI positively identified him as the "Adonys" from whom he had purchased the crack cocaine.

**{5}** Upon consideration of the foregoing information, a judge issued the requested search warrant. When officers subsequently executed the warrant they found and seized a variety of incriminating items from Defendant's residence. The underlying charges were filed against Defendant in due course.

**{6}** Defendant moved to suppress all of the evidence seized in the course of the search on grounds that the affidavit provided inadequate support for a finding of probable cause. After hearing the arguments of counsel, the district court granted Defendant's motion. The instant appeal followed.

**STANDARD OF REVIEW**

**{7}** The issuance of a search warrant is reviewed under a substantial basis standard. *State v. Williamson*, 2009-NMSC-039, ¶ 29, 146 N.M. 488, 212 P.3d 376. "[T]he substantial basis standard of review is more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact." *Id.* ¶ 30.

**{8}** "[W]hen an application for a search warrant is based on an affidavit, the affidavit must contain sufficient facts to enable the issuing magistrate independently to pass judgment on the existence of probable cause." *Id.* (internal quotation marks and citation omitted). Our review is limited to the contents of the affidavit. *State v. Nyce*, 2006-NMSC-026, ¶ 8, 139 N.M. 647, 137 P.3d 587, *holding limited by Williamson*, 2009-NMSC-039, ¶ 29 & n.1.

**{9}** We do not substitute our judgment for that of the issuing court. *Williamson*, 2009-NMSC-039, ¶ 29. Rather, "the reviewing court must determine whether the affidavit as a whole, and the reasonable inferences that may be drawn therefrom, provide a substantial basis for determining that there is probable cause to believe that a search will uncover evidence of wrongdoing." *Id.*

**DISCUSSION**

**{10}** As previously described, the affidavit was largely based on the hearsay statements of the CI. Rule 5-211(E) NMRA provides that hearsay may supply a proper

4

basis for the issuance of a warrant, "provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." *Accord State v. Cordova*, 1989-NMSC-083, ¶ 6, 109 N.M. 211, 784 P.2d 30 (observing that the allegations of an informant cannot provide probable cause to issue a search warrant unless both the basis of the informant's knowledge and the veracity or credibility of the informant are demonstrated).

{11}     There appears to be no dispute about the adequacy of the factual basis for the CI's knowledge in this case. The affidavit clearly reflects that the information supplied by the CI was based on first-hand experience, gained by virtue of its direct interaction with Defendant. *See generally State v. Lujan*, 1998-NMCA-032, ¶ 12, 124 N.M. 494, 953 P.2d 29 (observing that when "first-hand knowledge naturally and logically flows from a common-sense reading of the affidavit, that will suffice"). This is sufficient to satisfy the basis of knowledge requirement. *See, e.g., State v. Whitley*, 1999-NMCA-155, ¶ 4, 128 N.M. 403, 993 P.2d 117 (holding that the basis of knowledge requirement was met where, among other considerations, the informant personally observed the defendant), *holding limited by Williamson*, 2009-NMSC-039, ¶ 29; *Lujan*, 1998-NMCA-032, ¶¶ 9, 12 (holding that a controlled buy supplied first-hand knowledge); *State v. Montoya*, 1992-NMCA-067, ¶ 14, 114 N.M. 221, 836 P.2d 667 (holding that the basis of knowledge requirement was satisfied where a

confidential informant had personal knowledge, through observation, of the defendant's activities).

{12}     The parties differ with respect to the CI's credibility. An informant's credibility or veracity may be established in a variety of ways, including by showing that "(1) the informant has given reliable information to police officers in the past, (2) the informant is a volunteer citizen-informant, (3) the informant has made statements against his or her penal interest, (4) independent investigation by police corroborates informant's reliability or information given, and (5) facts and circumstances disclosed impute reliability." *In re Shon Daniel K.*, 1998-NMCA-069, ¶ 12, 125 N.M. 219, 959 P.2d 553 (citations omitted), *holding limited by Williamson*, 2009-NMSC-039, ¶ 29.

{13}     With respect to the first factor, the affidavit merely indicates that the CI "has proven to be reliable," chiefly by virtue of its knowledge and experience with controlled substances and drug trafficking activities. Such generalized assertions of reliability and vague references to past involvement with law enforcement activities are insufficient to establish that the informant has actually given reliable information to police officers in the past. *See State v. Therrien*, 1990-NMCA-060, ¶ 6, 110 N.M. 261, 794 P.2d 735 (holding that a police officer's statement that he knew the informant to be reliable is insufficient to establish credibility), *overruled on other grounds by State v. Barker*, 1992-NMCA-117, ¶ 13, 114 N.M. 589, 844 P.2d 839;

6

*and see, e.g., State v. Vest*, 2011-NMCA-037, ¶¶17-18, 149 N.M. 548, 252 P.3d 772 (observing that previous performance supports credibility only if the affidavit indicates that the informant actually provided accurate information to law enforcement in the past), *cert. quashed*, 2012-NMCERT-004, 293 P.3d 887.

{14} With respect to the second factor, the CI was not a volunteer citizen-informant. Instead, the CI was seeking a monetary reward. And, while the CI may have been aware that the provision of inaccurate information carried the threat of prosecution, this is not equivalent to the indication of reliability associated with citizen-informant status. *See State v. Dietrich*, 2009-NMCA-031, ¶ 16, 145 N.M. 733, 204 P.3d 748 (quoting authority to the effect that a paid informant is regarded as less reliable than a concerned citizen-informant).

{15} With respect to the remaining factors, the affidavit supplies much more meaningful support for the veracity of the CI.

{16} As previously described, the CI stated that it had recently purchased crack cocaine from Defendant at the specified location. Because there is a clear nexus between this admission and Defendant's criminal activity, the CI's statement may properly be regarded as the sort of statement against penal interest which suggests credibility. *See Barker*, 1992-NMCA-117, ¶¶ 6-10 (holding that statements against penal interest reflect upon an informant's credibility where there is a nexus to the

7

defendant's criminal activity, and where the affidavit tends to show that the informant would have had a reasonable fear of prosecution).

{17} Additionally, and perhaps most importantly, the controlled purchase supplies strong support for the CI's credibility. *See generally Lujan*, 1998-NMCA-032, ¶10 (observing that a controlled buy bears upon the credibility of a confidential informant, insofar as it "reduces the uncertainty and risk of falsehood about the information provided by [an] informant"). The information initially supplied by the CI about Defendant's drug trafficking activities at the specified location was clearly and directly corroborated by the carefully arranged and monitored controlled buy. This is sufficient to establish veracity. *See generally* 2 Wayne R. LaFave, *Search & Seizure* § 3.3(f), at 225-27 (5th ed. 2012) (observing that "corroboration will suffice to show veracity . . . [where an informant] has cooperated closely with the police . . . [such as] when the informant makes a controlled purchase of narcotics"); *and cf. State v. Knight*, 2000-NMCA-016, ¶ 21, 128 N.M. 591, 995 P.2d 1033 (holding that where an affidavit provided information about the informant's repeated and extensive cooperation with police officers, reliability could properly be imputed from the facts and circumstances), *holding limited by Williamson*, 2009-NMSC-039, ¶ 29.

{18} In his brief, Defendant suggests that the controlled buy should be disregarded on grounds that "a security gate prevented [Affiant] from seeing if the [CI] ever

8

actually went to [Defendant's] apartment at all." However, the presence of "a security lock on the entrance door to the building" which prevented Affiant from obtaining "a further description of apartment #1007" does not signify that the officers were unable to observe the CI's movements to and from the apartment. To the contrary, the affidavit clearly specifies that the CI "was viewed to make contact at 3853 Montgomery NE #1007," that the CI "entered the residence," and that the CI exited one to five minutes later, whereupon the CI directly proceeded to the prearranged end point. The affidavit also repeatedly specifies that the CI was kept under "constant surveillance" on the way to and from the apartment. This is sufficient to establish that the controlled buy took place at the specified location. *See generally Williamson*, 2009-NMSC-039, ¶ 30 ("[I]f the factual basis for the warrant is sufficiently detailed in the search warrant affidavit and the issuing court has found probable cause, the reviewing courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Id.* (alteration, internal quotation marks, and citation omitted)).

{19}    Defendant further argues that this Court's decision in *Vest* indicates that the controlled buy does not support the CI's veracity. However, *Vest* addressed a very different situation. In that case, the informant's participation in two prior, unrelated controlled purchases was rejected as a basis for inferring credibility because the

9

affidavit contained nothing to indicate that the informant had actually supplied any reliable information to law enforcement officers. 2011-NMCA-037, ¶ 17. In this case, by contrast, the controlled purchase took place at the location that was ultimately subjected to search, and it substantiated the information that the CI had previously supplied to Affiant about Defendant's drug dealing activities at that location. Accordingly, the controlled buy clearly supplied strong support for the CI's veracity.

{20} Finally, we note the district court's concern that the officers "did not observe the residence during the same time frame as *all* of the CI's interactions with it." However, neither *Vest* nor any other authority of which we are aware suggests such a requirement. Efforts by police to corroborate information supplied by informants must simply be timely, in order to avoid staleness concerns. *Id.* ¶¶ 21-22. In this case, the controlled buy took place within the preceding 72 hours. The controlled buy therefore supplied the sort of timely corroboration which was lacking in *Vest*. *See Lujan*, 1998-NMCA-032, ¶¶ 2, 16 (concluding that a controlled buy from a residence within the preceding 72 hours did not supply stale information).

**CONCLUSION**

{21} For the reasons stated, we conclude that the affidavit provided the issuing judge with sufficient information to establish both the basis of the CI's knowledge and the CI's credibility, such that the warrant was supported by probable cause. We therefore

reverse and remand for further proceedings.

{22}   **IT IS SO ORDERED**.

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**M. MONICA ZAMORA, Judge**

11